United States District Court
Southern District of Texas
**ENTERED**
December 26, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THE NATIONAL SHIPPING COMPANY OF SAUDI ARABIA, | § § § | |
| Plaintiff, | § § | |
| VS. | § § | |
| VALERO MARKETING AND SUPPLY COMPANY, | § § § | CIVIL ACTION NO. H-19-1096 |
| Defendant, | § § | |
| VS. | § § | |
| TRAFIGURA TRADING LLC, | § § § | |
| Third-Party Defendant. | § | |
| | | |
| INDELPRO S.A. DE C.V., | § § | |
| Plaintiff, | § § | |
| VS. | § § § | |
| VALERO MARKETING AND SUPPLY COMPANY, | § § § | CIVIL ACTION NO. H-19-4115 |
| Defendant, | § § | |
| VS. | § § | |
| TRAFIGURA TRADING LLC, | § § § | |
| Third-Party Defendant. | § | |

**MEMORANDUM AND OPINION**

Two shipping companies sued Valero Marketing and Supply Company, alleging that

Valero supplied the companies with contaminated fuel. In both cases, Valero filed a third-party

complaint against Trafigura Trading LLC, the company that supplied Valero the allegedly contaminated fuel, alleging breach of contract, negligence, breach of warranties, and a violation of the Texas Civil Practice and Remedies Code. Trafigura, the third-party defendant, argues that Valero brought its claims under three contracts. One has a mandatory arbitration clause, and the others have an exclusive forum-selection clause. Trafigura moves the court to sever and transfer Valero's third-party claims subject to the forum-selection clauses to the designated forum, the Southern District of New York, and to dismiss the claims subject to the arbitration clause in favor of arbitration.

Because the two cases involve very similar motions and the same three contracts between Valero and Trafigura, the court addresses the motions in a single opinion. Based on the amended third-party complaints, the motions and responses, and the applicable law, the court grants Trafigura's motion to sever and transfer the claims under two of the contracts, and grants the motion to sever and dismiss the claims under the other contract for both *The National Shipping Company v. Valero* and *Indelpro v. Valero*. The reasons for these rulings are set out below.

**I.     Background**

The background of each of the two cases is described below.

### A.     *The National Shipping Company v. Valero*, Civil Action No. 19-1096

National Shipping alleges that in March 2018, Valero agreed to supply approximately 750 metric tons of bunker fuel to the *M/V Bahri Yanbu*. Valero delivered the fuel to the vessel while it was docked in Houston later that month. (Civil Action No. 19-1096, Docket Entry No. 11 at ¶¶ 6–7). The vessel began using the fuel in April 2018. (*Id.* at ¶ 8). National Shipping noticed engine problems shortly thereafter. (*Id.*). National Shipping sued Valero in March 2019, asserting diversity jurisdiction under 28 U.S.C. § 1332 and admiralty and maritime jurisdiction under 28

U.S.C. § 1333.  (Civil Action No. 19-1096, Docket Entry No. 1 at ¶ 3).  Valero answered and filed a third-party complaint against Trafigura.  (Civil Action No. 19-1096, Docket Entry Nos. 8, 43).

Valero alleges in its third-party complaint that in "February and March 2018, Valero and Trafigura entered into three written contracts for the purchase of fuel oil to be sold by Trafigura and delivered to Valero at the Bostco Terminal in LaPorte, Texas."  (Civil Action No. 19-1096, Docket Entry No. 43 at ¶ 9).  Valero alleges that tests on the fuel Trafigura supplied showed elevated amounts of 4-cumyl-phenol, which may have contaminated the fuel.  (*Id.* at ¶¶ 14, 22, 29).  Valero alleges that it transferred some of the fuel to Buffalo Barge 302, "which Valero uses to supply marine bunker fuel pursuant to sales to third-party customers," including National Shipping.  (Civil Action No. 19-1096, Docket Entry No. 43 at ¶¶ 16, 24, 31, 32).

The three transactions are as follows:

- February 2018.  Valero sent Trafigura a purchase contract for approximately 90,000 barrels of fuel oil.  (Civil Action No. 19-1096, Docket Entry No. 43 at ¶ 10; Civil Action No. 19-1096, Docket Entry No. 52-A-2).  Later that month, Trafigura sent Valero Contract No. 1654384, confirming the purchase.  (Civil Action No. 19-1096, Docket Entry No. 52-A-1).  Contract No. 1654384 contains a section on "Law and Jurisdiction," providing:

    > THIS CONTRACT SHALL BE GOVERENED BY, CONSTRUED AND ENFORCED UNDER THE LAWS OF THE STATE OF NEW YORK WITHOUT GIVING THE EFFECT TO ITS CONFLICT OF LAWS PRINCIPLES.
    >
    > ANY AND ALL CLAIMS, DISPUTES OR CONTROVERSIES BETWEEN THE PARTIES ARISING OUT OF OR RELATING IN ANY WAY TO THIS AGREEMENT OR THE FORMATION, EXECUTION, BREACH OR TERMINATION THEREOF SHALL BE EXCLUSIVELY SETTLED AND RESOLVED BY ARBITRATION CONDUCTED IN THE ENGLISH LANGUAGE IN THE CITY OF NEW YORK, STATE OF NEW YORK, USA . . . .

    (*Id.* at ¶ 26).

- February 2018. Valero sent Trafigura another purchase contract for approximately 90,000 barrels of fuel oil. (Civil Action No. 19-1096, Docket Entry No. 43 at ¶ 18; Civil Action No. 19-1096, Docket Entry No. 52-A-4). The same day, Trafigura sent Valero Contract No. 1659403, confirming the purchase. (Civil Action No. 19-1096, Docket Entry No. 52-A-3). Contract No. 1659403 contains a section on "Law and Jurisdiction," providing:

    > THIS CONTRACT SHALL BE GOVERENED BY, CONSTRUED AND ENFORCED UNDER THE LAWS OF THE STATE OF NEW YORK WITHOUT GIVING THE EFFECT TO ITS CONFLICT OF LAWS PRINCIPLES.
    >
    > EACH PARTY HEREBY IRREVOCABLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF ANY FEDERAL COURT OF COMPETENT JURISDICTION SITUATED IN THE BOROUGH OF MANHATTAN, NEW YORK . . . .

    (*Id.* at ¶ 26).

- March 2018. Valero sent Trafigura a third purchase contract for approximately 2,500 barrels of fuel oil. (Civil Action No. 19-1096, Docket Entry No. 43 at ¶ 26; Civil Action No. 19-1096, Docket Entry No. 52-A-6). Later that month, Trafigura sent Valero Contract No. 1669270, confirming the purchase. (Civil Action No. 19-1096, Docket Entry No. 52-A-5). Contract No. 1669270 contains a section on "Law and Jurisdiction," identical to the clause in Contract No. 1659403. (*Id.* at ¶ 26).

In its third-party complaint, Valero asserted claims for contract breach, negligence, express and implied warranty breach, products liability, and a violation of the Texas Civil Practice and Remedies Code against Trafigura. (Civil Action No. 19-1096, Docket Entry No. 43 at 39–69). Valero also invoked Rule 14(c) to tender "Trafigura as a direct defendant to Plaintiff . . . because Trafigura is wholly liable to [National Shipping] for negligence, products liability remedy over,

4

contribution or otherwise on account of the same transaction and occurrence or series of transactions and occurrences in this matter." (Civil Action No. 19-1096, Docket Entry No. 43 at ¶ 70).

Trafigura argues that Valero may not pursue its claims in this court. (Civil Action No. 19-1096, Docket Entry Nos. 52, 53). Trafigura points to the mandatory arbitration clause in Contract No. 1654384 and to the choice-of-forum clauses in Contracts No. 1659403 and 1669270 to argue that Valero's claims must be resolved either in the Southern District of New York or in arbitration. (*Id.*). Valero responds that it tendered Trafigura to National Shipping under Rule 14(c), which Valero asserts keeps Trafigura in the litigation and keeps all the claims in this court. (Civil Action No. 19-1096, Docket Entry No. 60). Trafigura replies that Rule 14(c) does not apply to preclude enforcement of the forum-selection or arbitration clauses. (Civil Action No. 19-1096, Docket Entry No. 61).

National Shipping has not filed briefs in support of either Valero or Trafigura or asserted claims against Trafigura.

### B.     *Indelpro v. Valero*, 19-4115

Indelpro, a Mexican company, time-chartered the *M/V Zoe Schulte*. (Civil Action No. 19-4115, Docket Entry No. 1 at ¶¶ 4, 8). In March 2018, Indelpro ordered over 600 metric tons of marine fuel from Valero. (*Id.* at ¶ 14). In May 2018, Indelpro was using the fuel in the *M/V Zoe Schulte* when it "began experiencing serious operational issues." (*Id.* at ¶ 21). Indelpro tested the fuel and discovered that it did not meet industry standards or the "basic international standard for marine fuel." (*Id.* at ¶¶ 23–25). Indelpro alleges that as a result of using the contaminated fuel, the *M/V Schulte* was physically damaged and Indelpro's operations were disrupted and delayed. (*Id.* at ¶¶ 27–30).

In March 2019, Indelpro sued Valero in federal district court on the basis of diversity jurisdiction under 28 U.S.C. § 1332, and, "as an independent basis for jurisdiction over the subject matter of this action," admiralty and maritime jurisdiction under 28 U.S.C. § 1333. (*Id.* at ¶¶ 2–3). Valero answered and filed a third-party complaint against Trafigura under Federal Rule of Civil Procedure 14(a). (Civil Action No. 19-4115, Docket Entry No. 5). Valero alleges that Trafigura supplied the fuel that damaged the *M/V Zoe Schulte*. (*Id.* at ¶¶ 10–29). Valero alleges that Trafigura supplied the fuel as part of the same three transactions, and under the same three contracts, that it alleges in the *National Shipping* case. (Civil Action No. 19-4115, Docket Entry No. 39-1 at ¶¶ 12–34).

## II.     The Legal Standards

### A.     The Arbitration Clause

Federal policy strongly favors enforcing contractual arbitration agreements if the contracts exist under state law and the disputes are within the scope of the arbitration clause. *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217 (1985); *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). A court must decide "whether the parties agreed to arbitrate the dispute in question," which requires deciding whether: "(1) there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006) (quoting *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996)). State contract law governs the validity and scope of an arbitration agreement. *Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008). If there is an enforceable agreement to arbitrate claims, the court must determine whether any federal statute or policy makes the claims nonarbitrable. *JP Morgan Chase & Co. v. Conegie ex rel. Lee*, 492 F.3d 596, 598 (5th Cir. 2007).

The Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, permits a party to move to compel arbitration when an opposing party refuses to arbitrate issues covered by a valid arbitration agreement. *Am. Bankers Ins. Co. of Fla. v. Inman*, 436 F.3d 490, 493 (5th Cir. 2006) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)); 9 U.S.C. § 4. Because of the strong presumption in favor of arbitration, "a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity." *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004). The FAA requires district courts to order arbitration of all arbitrable claims. *Vallejo v. Garda CL Sw. Inc.*, 948 F. Supp. 2d 720, 234 (S.D. Tex. 2013) (citing *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co. (In re Sedeco, Inc.)*, 767 F.2d 1140, 1147 (5th Cir. 1985)). District courts should dismiss rather than stay litigation pending arbitration if all the issues must be resolved by arbitration. *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992).

**B.     The Forum-Selection Clauses**

The venue-transfer statute, 28 U.S.C. § 1404, authorizes a district court to transfer a case when the chosen venue is "inconvenient." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008) (en banc). Section 1404(a) states that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 60 (2013). Under this doctrine, a "court may, in the exercise of its sound discretion, dismiss the case, even if jurisdiction and proper venue are

7

established." *Am. Dredging Co. v. Miller*, 510 U.S. 443, 448 (1994) (citations and quotations omitted). Federal law determines whether a forum-selection clause is enforceable. *All. Health Grp., LLC v. Bridging Health Options, LLC*, 553 F.3d 397, 399 (5th Cir. 2008). A forum-selection clause is *prima facie* valid and enforceable unless the opposing party shows that enforcement would be unreasonable. *Int'l Software Sys., Inc. v. Amplicon, Inc.*, 77 F.3d 112, 114 (5th Cir. 1996); *see also Calix-Chacon v. Global Int'l Marine, Inc.*, 493 F.3d 507, 511 (5th Cir. 2007) (noting that a forum-selection clause is not enforceable if it is "fundamentally unfair and therefore unreasonable").

To determine whether transfer is convenient, a court must examine private and public factors. *Volkswagen*, 545 F.3d at 315. The private factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious[,] and inexpensive." *Id.* (quotation omitted). The public factors are "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Id.* (alteration and quotation omitted). "A plaintiff's choice of forum is given some—significant but non-determinative—weight." *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 767 (5th Cir. 2016) (quotation omitted). These factors are neither "exhaustive" nor "exclusive," and "none can be said to be of dispositive weight." *Volkswagen*, 545 F.3d at 315 (alteration and quotation omitted). The court must "balance a number of case-specific factors" and conduct "an 'individualized, case-by-case consideration of convenience and fairness.'" *In re*

*Rolls Royce Corp.*, 775 F.3d 671, 678 (5th Cir. 2014) (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

The opposing party has a "high burden of persuasion" to avoid enforcement. *Weber*, 811 F.3d at 776. If the court determines that a forum-selection clause is valid and enforceable, the clause controls "the *forum non conveniens inquiry* '[i]n all but the most unusual cases.'" *Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296, 300 (5th Cir. 2016) (quoting *Atl. Marine*, 571 U.S. at 66).

### III.   Analysis

#### A.   The Arbitration Clause

Contract No. 1654384 contains an arbitration clause. (Civil Action No. Docket Entry No. 52-A-1 at ¶ 26). Valero does not argue that the arbitration clause in Contract No. 1654384 is invalid or inapplicable. Instead, Valero argues that enforcing the arbitration clause should be denied or delayed because enforcement will result in piecemeal litigation, and "Trafigura has failed to meet its burden to show that piecemeal litigation is necessary." (Civil Action No. 19-4115, Docket Entry No. 30 at 3). Trafigura responds that it has no burden to justify piecemeal litigation, but rather to show only a valid agreement to arbitrate between the parties. (Civil Action No. 19-4115, Docket Entry No. 36 at 3).

The strong presumption in favor of arbitration applies here. *See Poole-Ward v. Affiliates for Women's Health, P.A.*, 283 F. Supp. 3d 595, 598 (S.D. Tex. 2017). "[T]he FAA's purpose is to enforce private arbitration agreements 'even if the result is 'piecemeal litigation,' at least absent a countervailing policy manifested in another federal statute.'" *Horizon Navigation Ltd. v. Progressive Barge Line, Inc.*, 365 F. Supp. 3d 715, 724 (E.D. La. 2019) (quoting *Dean Witter*, 470 U.S. at 219–20). "The fact that [a] defendant has successfully impleaded a third party does not guarantee that the third-party claim will be adjudicated in conjunction with the main claim." *Id.*

9

(quoting 6 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1460 (3d ed. 2019)).

Contract No. 1654384 is a valid agreement to arbitrate, and some of Valero's claims fall within the scope of that agreement. Valero does not dispute this. Trafigura's motion to dismiss the third-party claims arising from Contract No. 1654384 is granted.

### B. The Forum-Selection Clause

Contracts No. 1659403 and 1669270 contain forum-selection clauses identifying the Southern District of New York as having exclusive jurisdiction. (Civil Action No. 19-1096, Docket Entry No. 52-A-3 at ¶ 26; Civil Action No. 19-1096, Docket Entry No. 52-A-5 at ¶ 26). While Valero does not claim that enforcement would be unreasonable, it argues that several factors should prevent the court from enforcing the forum-selection clause in the two contracts.

Valero argues that it "did not choose the venue, but [that the venue] was rather already present when Plaintiff initiated the current suit" because the parties, transactions, and activities at issue are in, or took place in, the Southern District of Texas. (Civil Action No. 19-4115, Docket Entry No. 31 at 3). Valero argues that there "is no factor that favors a transfer to New York because that forum has no connection to the facts giving rise to this matter." (*Id.* at 3–4). Finally, Valero argues that "[j]udicial economy and efficiency are promoted by resolving the pending claims in this court" because it is unclear which contracts are implicated in the plaintiffs' claims. (*Id.* at 4).

Trafigura responds that Valero is asking the court to ignore the parties' contracts and Supreme Court precedent. (Civil Action No. 19-4115, Docket Entry No. 37 at 2). As the Supreme Court explained in *Atlantic Marine Construction Company. v. U.S. District Court for the Western District of Texas*, 571 U.S. 49, 64 (2013), when parties agree to a forum-selection clause, a court "must deem the private-interest factors to weigh entirely in favor of the preselected forum." Valero

acknowledges that the Section 1404(a) private-interest factors do not apply when there is a valid forum-selection clause, but each of its arguments present a "practical problem," which is part of the private-interest analysis. (Civil Action No. 19-4115, Docket Entry No. 31 at 3). A valid and enforceable forum-selection clause is given controlling weight absent public-interest factors that are not present here. Trafigura's motion to sever the claims under Contracts No. 1659403 and 1669270 and transfer them to the Southern District of New York is granted.

### C. The Rule 14(c) Tender

In the *National Shipping* case, Valero asks the court to determine whether it has properly tendered Trafigura to National Shipping, and if so, whether the Rule 14(c) tender can be "negated" because of the arbitration and forum-selection clauses in the contracts between Valero and Trafigura.[1] (Civil Action No. 19-1096, Docket Entry No. 60 at 1-2). Trafigura replies that the arbitration and forum-selection clauses make Valero's third-party complaint improper. Because the Rule 14(c) tender was "premised, and entirely dependent on, [Valero's] third-party complaint[,]" Trafigura argues that the Rule 14(c) tender is improper as well. (Civil Action No. 19-1096, Docket Entry No. 61 at 2).

Rule 14 governs third-party practice, and Rule 14(c) governs impleader for admiralty and maritime claims. "Rule 14(c) permits a defendant to implead a third-party defendant for two purposes: (1) to seek contribution or indemnification from the third-party defendant, and (2) to tender the third-party defendant to the plaintiff." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 242 (5th Cir. 2009). Rule 14(c) states:

> (1) Scope of Impleader. If a plaintiff asserts an admiralty or maritime claim under Rule 9(h), the defendant or a person who asserts a right under Supplemental Rule

---

[1] Valero makes these arguments in *The National Shipping Company v. Valero* case, not in *Indelpro v. Valero*. The court denied Valero's motion for leave to add a Rule 14(c) tender against Trafigura in *Indelpro v. Valero* because Indelpro did not make a Rule 9(h) designation, a prerequisite for a Rule 14(c) tender. (Civil Action No. 19-4115, Docket Entry No. 46).

11

> C(6)(a)(i) may, as a third-party plaintiff, bring in a third-party defendant who may be wholly or partly liable--either to the plaintiff or to the third-party plaintiff--for remedy over, contribution, or otherwise on account of the same transaction, occurrence, or series of transactions or occurrences.

*Id.* The Rule "was designed to expedite and consolidate admiralty actions." *Texaco Expl. & Prod. Co. v. AmClyde Engineered Prod. Co.*, 243 F.3d 906, 910 (5th Cir. 2001). "As a consequence, the plaintiff is then required to assert his claims directly against the third-party defendant." *Id.*

The case law defeats Valero's effort to use Rule 14(c) to avoid its contractual duties to arbitrate or to sue in an exclusive forum. The FAA "specifically applies to both maritime transactions and interstate commerce." *Id*. at 909. *Texaco Exploration & Production Company v. AmClyde Engineered Products Company*, 243 F.3d 906, 908 (5th Cir. 2001), is instructive. In *Texaco*, a crane owned and operated by McDermott failed, damaging Texaco's production facility. Texaco sued AmClyde, the crane designer and manufacturer, but pursued alternative dispute resolution with McDermott under a mandatory arbitration clause in its contract with McDermott. *Id.* AmClyde then tendered McDermott to Texaco under Rule 14(c); Texaco moved to strike the joinder; and McDermott moved for partial summary judgment against Texaco. *Id.*

McDermott, like Valero, argued that "Rule 14(c) 'trumps' section 3 of the FAA, preventing enforcement of the arbitration clause." *Id.* at 910. The Fifth Circuit disagreed, stating that McDermott's approach would "allow[] AmClyde, though not a party to the arbitration agreement, to override the Texaco-McDermott contract and fundamentally thwart the purposes of the FAA." *Id.* The appellate court concluded that "to carve out a Rule 14(c) exception to the FAA could severely undermine maritime arbitration clauses, inspiring abuse and opportunistic behavior, as third parties are allowed or encouraged to do what the parties to a contract themselves are not: to put aside a mandatory arbitration provision and force litigation." *Id.* The appellate court remanded to the district court to order a stay pending the contractually mandated arbitration.

Here, the arbitration clause is in the contract between Valero and Trafigura, making it a simpler case than *Texaco*. As the Fifth Circuit explained, parties to a contract may not "put aside a mandatory arbitration provision and force litigation." *See Texaco*, 243 F.3d at 910.

A contractual forum-selection clause is recognized in admiralty. *See Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d at 241. "[A] forum selection clause in admiralty will be enforced unless enforcement would contravene a strong public policy of the forum in which suit is brought." *GIC Servs., LLC v. Freightplus (USA) Inc.*, No. CIV.A. H-13-0567, 2013 WL 6813878, at *2 (S.D. Tex. Dec. 24, 2013). As previously discussed, there are no public policy reasons to set aside the parties' forum-selection clause. Valero may not ignore the contractual forum-selection clause to require litigation in the Southern District of Texas through its Rule 14(c) tender.

Valero attempts to distinguish *Texaco* by arguing that so long as no contractual relationship exists "between the third-party-defendant and the plaintiff, a Rule 14(c) tender is fully authorized." (Civil Action No. 19-1096, Docket Entry No. 60 at 6). Valero relies on *Walter Oil & Gas Corp. v. Teekay Shipping*, 270 F. Supp. 2d 855, 857 (S.D. Tex. 2003). In that case, Walter Oil & Gas Corporation sued Teekay Shipping and the *M/V Orkney Spirit* after the vessel's anchor damaged Walter Oil's gas pipeline. *Id.* Bona, the *M/V Orkney Spirit*'s owner, filed a third-party complaint against Skaugen Petrotrans, Inc., the *M/V Orkney Spirit*'s charterer. *Id.* Skaugen then moved to dismiss or stay the third-party complaint based on an arbitration clause in its contract with Bona. *Id.* The court granted Skaugen's motion for a stay pending the arbitration of Bona's claims against Skaugen, stating that because "the instant claims are arbitrable, [the court] must stay those particular claims within the lawsuit under Section 3 of the FAA." *Id.* at 862. The court held that because "Walter's claims against Skaugen after the tender are not bound by any arbitration agreement, . . . dismissing the third-party complaint is inappropriate." *Id.* at 863–64. The court

13

explained that "after Skaugen was impleaded under Fed.R.Civ.P. 14(c), Skaugen became both a third-party defendant as to Bona's claims for contribution and indemnity and a defendant to Walter's claims for negligence in operating the Vessel." *Id.* at 863.

*Walter Oil* is distinguishable. First, the plaintiff in *Walter Oil* directly prosecuted claims against the third-party defendant. In this case, by contrast, neither National Shipping nor Indelpro has pursued claims against Trafigura, even when given a chance to amend to do so. (*See* Civil Action No. 19-4115, Docket Entry No. 22 at 14). Second, *Walter Oil* does not establish that a Rule 14(c) tender itself make a plaintiff's claims against the defendant direct claims against the third-party defendant. The *Texaco* court explained that after a Rule 14(c) tender, "the plaintiff is then required to assert his claims directly against the third-party defendant." 243 F.3d at 910.[2] Neither National Shipping nor Indelpro has done so.

The Rule 14(c) tender does not overcome the contractually agreed arbitration clause and forum-selection clauses. *See Texaco*, 243 F.3d at 910. Trafigura's motions are properly granted.

## IV. Conclusion

In *The National Shipping Company v. Valero*, the court grants Trafigura's renewed motion to sever the third-party claims under Contracts No. 1659403 and 1669270 and transfer them to the United States District Court for the Southern District of New York. (Civil Action No. 19-1096, Docket Entry No. 52). The court also grants Trafigura's renewed motion to sever the remaining

---

[2] Other district courts reach similar conclusions. *See Bax Glob., Inc. v. Ocean World Lines, Inc.*, No. 07CIV.10457NRB, 2009 WL 3001816, at *2 (S.D.N.Y. Sept. 18, 2009) (the district court dismissed a Rule 14(c) tender when the third-party plaintiff and the third-party defendant had a contract with a forum-selection clause, and the plaintiff "ha[d] not actually asserted any claims" against the third-party defendant); *United States v. M/V COSCO BUSAN, LR/IMO Ship. No. 9231743*, No. 07-6045 SC, 2008 WL 4938106, at *4 (N.D. Cal. Nov. 17, 2008) ("In a sense, the Rule permits courts to indulge in a legal fiction and proceed under the pretend assumption that the plaintiff had in fact sued the third-party defendant. Notably, however, Rule 14 does not say that, by its operation, the plaintiff does in fact sue a third-party defendant brought in by the third-party plaintiff.").

14

third-party claims under Contract No. 1654384, and dismiss them in favor of arbitration. (Civil Action No. 19-1096, Docket Entry No. 53).

In *Indelpro v. Valero*, the court grants Trafigura's motion to sever the third-party claims under Contracts No. 1659403 and 1669270 and transfer them to the United States District Court for the Southern District of New York. (Civil Action No. 19-4115, Docket Entry No. 25). The court also grants Trafigura's renewed motion to sever the remaining third-party claims under Contract No. 1654384, and dismiss them in favor of arbitration. (Civil Action No. 19-4115, Docket Entry No. 24).

SIGNED on December 26, 2019, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge